# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 4:05-CR-0230** |
| | : | |
| v. | : | **(Judge Conner)** |
| | : | |
| **JOHN FLOYD CAREY** | : | |

## MEMORANDUM

Presently before the court is defendant's *pro se* motion (Doc. 292) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1] Defendant John Floyd Carey ("Carey") asserts three grounds for relief, contending that: (1) the district court lacked proper subject matter jurisdiction, (2) his case was not heard by an Article III judge or by an impartial court, and (3) his attorney provided ineffective assistance of counsel.[2] For the reasons that follow, Carey's motion (Doc. 292) will be denied.

## I.  Statement of Facts & Procedural History

On June 9, 2005, a federal grand jury returned a six-count indictment charging Carey with mail fraud in violation of 18 U.S.C. § 1341 (four counts), arson of a building used in interstate commerce in violation of 18 U.S.C. § 844(I), and use

---

[1] See 28 U.S.C. § 2255 ("A prisoner in custody under sentence of a [district] court . . . claiming . . . that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.").

[2] Carey claims that his counsel failed to: (1) raise appropriate evidentiary objections throughout his trial and (2) present certain evidence and witnesses that would have allegedly supported his defense. (Doc. 292, at 18-23). He also claims that the cumulative effect of these errors was prejudicial. (Doc. 292, at 17, 23-24).

of fire to commit a felony in violation of 18 U.S.C. § 844(h). (Doc. 1). On March 5, 2007, a jury found Carey guilty on all counts. (Doc. 190). The trial court sentenced Carey to 183 months of imprisonment, a supervised release term of three years, and ordered restitution in the amount of $500. (Doc. 256).

Carey appealed his sentence to the Third Circuit on March 21, 2008. (Doc. 258). On July 20, 2009, the Third Circuit affirmed both the conviction and sentence. United States v. Carey, 337 Fed. App'x 256 (3d Cir. 2009). Thereafter, Carey filed a writ of certiorari to the United States Supreme Court, which was denied on November 16, 2009. (Doc. 300, at 3). On October 12, 2010, Carey timely filed this motion (Doc. 292) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The motion has been fully briefed and is ripe for disposition.

## II.  Discussion

Carey asserts three main grounds on which he believes the court should vacate his sentence. These claims relate to (1) subject matter jurisdiction, (2) the impartiality of the trial court, and (3) the effectiveness of counsel. The court will address these arguments *in seriatim*.[3]

---

[3] The court declines to hold a hearing on Carey's § 2255 motion because, as discussed infra, his claims are without merit. See Virgin Islands v. Nicolas, 759 F.2d 1073, 1075 (3d Cir. 1985) (stating that, when the record affirmatively indicates that a petitioner's § 2255 claim for relief is without merit, the claim may be decided on the record without a hearing).

## A. Jurisdictional Authority Under 18 U.S.C. § 3231

In his petition, Carey challenges the district court's authority to convict and sentence him pursuant to 18 U.S.C. § 3231.[4] (Doc. 292, at 2). He contends that Public Law 80-772, codified at 18 U.S.C. § 3231, was never passed or signed in the presence of a quorum or majority of both Houses of Congress as required by the United States Constitution. (See id.); U.S. CONST. art. I, § 5, cl. 1.

Carey's argument is neither new nor novel. See Decarlo v. Hollingsworth, No. 10-481-GPM, 2010 WL 5135883, at *2 (S.D. Ill. Dec. 10, 2010) ("[T]he argument that Title 18 of the United States Code was never constitutionally enacted . . . [is among the] perennial favorites of jailhouse lawyers."); Sainsbury v. Levi, No. 07-cv-4545, WL 4104097, at *3 (E.D. Pa. Nov. 16, 2007) (observing the "rumor" that Congress never validly enacted Public Law No. 80-772 has "spread like wildfire to prisoners throughout the entire country"). Even a cursory review of relevant cases makes it abundantly clear that Carey's claim lacks merit. See, e.g., United States v. Risquet, 426 F. Supp. 2d 310, 311-12 (E.D. Pa. 2006); Saleem v. United States, No. 5:11-cv-61-DCB-RHW, 2011 WL 2118610 (S.D. Miss. May 26, 2011); United States v. Siegleman, No. 2:05-cr-119-MEF-CSC, 2007 WL 1284276 (M.D. Ala. Apr. 30, 2007). Chao v. USA Mining, Inc., Nos. 1:04-CV-1, 1:04-CV-138, 2007 WL 208530, at *16 (E.D.

---

[4] See 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.").

Tenn. Jan. 24, 2007) ("Every court that has considered this argument has ruled against the defendant.").

The Third Circuit Court of Appeals addressed this issue in Wolford v. United States, 362 Fed. App'x 231 (3d Cir. 2010). Like Carey, Wolford claimed that Congress failed to constitutionally enact Public Law 80-772. The court summarily held that Public Law 80-772 passed both houses of Congress and that "Section 3231 was properly enacted and is binding." Id. at 256 (citing Risquet, 426 F. Supp. 2d at 311). Accord Cavender v. Doe, No. 5:11–cv–73–DCB–RHW, 2011 WL 3625362, at *3 (S.D. Miss. Aug. 17, 2011) (describing petitioner's claim that Public Law 80-772 was not properly enacted as "simply frivolous").

Although concurring with the reasoning of the numerous court opinions addressing this issue, including the Third Circuit, the court finds Carey's argument without merit on an additional ground. An enrolled bill, attested by the leaders of both the House and Senate, is conclusive evidence that it properly passed Congress. Field v. Clark, 143 U. S. 649, 672 (1894). In Field v. Clark, the United States Supreme Court held:

> The signing by the speaker of the house of representatives, and by the president of the senate, in open session, of an enrolled bill, is an official attestation by the two houses of such bill as one that has passed congress. It is a declaration by the two houses, through their presiding officers, to the president, that a bill, thus attested, has received, in due form, the sanction of the legislative branch of the government . . . . [I]ts authentication as a bill that has passed congress should be deemed complete and unimpeachable.

4

Id. A certified copy of H.R. 3190, as signed into Public Law 80-772, contains the signatures of both the Speaker of the House and the President pro tempore of the Senate. (Doc. 292-2, at 49). This bill was signed by President Harry Truman on June 25, 1948. (Id.). Accordingly, the congressional record provides conclusive evidence that Congress properly enacted Public Law 80-772, and the district court appropriately exercised jurisdiction over Carey pursuant to 18 U.S.C. § 3231. See United States v. Farmer, 583 F.3d 131, 151-52 (2d Cir. 2009) (upholding jurisdictional authority under Section 3231 on similar grounds).

### B. **Alleged Judicial Deficiencies**

Carey next contends that he was denied the right to a trial by an Article III judge. (Doc. 292, at 14). Without citing any legal authority, Carey argues that the district judge does not qualify as an Article III judge because he took "a Form 61 Commissioners Oath of Office." (Doc. 292, at 15). Carey further contends that the district judge's salary could be diminished, thereby violating the compensation clause.[5] (Id.)

Both of these claims lack merit. The Third Circuit recently addressed a petitioner's contention that a judge who takes a "Form 61 Commissioners Oath of Office" is not an Article III judge. In re Bernard, 419 Fed. App'x 154, 154 (3d Cir. 2011). The Third Circuit held that this argument was "wholly unsupported and

---

[5] The Constitution provides, in pertinent part: "The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office." U.S. CONST. art. III, § 1.

5

patently frivolous on its face." Id. Carey's other argument—that the district judge's salary could be reduced—is equally frivolous and unsupported by law.[6]

Carey also claims that the district court created a financial conflict of interest by selling "bonds based on Petitioners [sic] conviction[s]." (Doc. 292, at 15). To support his assertion, Carey provides an invalid website link to Dun & Bradstreet, Inc. (Doc 292, at 16). This claim is similarly without merit. See, e.g., Pegues v. United States, No. 2:10cv212-WKW, 2011 WL 5037509, at *3 n.5 (M.D. Ala. Sept. 26, 2011) ("[A]ssertion that the proceedings were void, because the court is selling conviction bonds as an incorporated for-profit entity . . . is frivolous."). Accord Dedona v. United States, No. 08-2046 (MLC), 2009 WL 2778386, at *6 (D.N.J. Aug. 31, 2009); United States v. Franklin, Nos. 06-20176-01, 09-2439, 2009 WL 4377860, at *3 (D. Kan. Nov. 23, 2009).

### C.  **Ineffective Assistance of Counsel**

Finally, Carey asserts that he received ineffective assistance of counsel. A claim of ineffective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on this claim, a petitioner must demonstrate (1) that counsel's representation fell below an objective standard of reasonableness and (2) that the deficient representation was

---

[6] Carey has provided no support for his contention. Furthermore, it is a matter of public record that Judge Malcom Muir—the presiding district judge—received his commission from the President of the United States after being confirmed by the United States Senate. See *Biographical Directory of Federal Judges*, FEDERAL JUDICIAL CENTER, http://www.fjc.gov/servlet/nGetInfo?jid=1710&cid=999&ctype=na&instate=na.

6

prejudicial. See id. at 687-88. A determination of ineffective assistance of counsel necessarily relies on consideration of the totality of unique circumstances in each case. United States v. Baynes, 687 F. 2d 659, 665 (3d Cir. 1982). Conclusory allegations are insufficient to entitle a petitioner to relief under § 2255. See Sepulveda v. United States, 69 F. Supp. 2d 633, 639-40 (D.N.J. 1999) (citing Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621 (1977)).

In determining whether counsel has satisfied the objective standard of reasonableness in accordance with the first prong, courts must be highly deferential toward counsel's conduct. See id. at 689. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989). Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance." Id. at 711 (citing Strickland, 466 U.S. at 689-90). Counsel will not be deemed ineffective for failing to raise a meritless claim. United States v. Saunders, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that, but for counsel's errors, the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 694. The district court need not carry out its analysis of the two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing in one. Id. at 697.

In the instant matter, Carey asserts that his attorney provided ineffective assistance by failing to: (1) object to, or seek suppression of, an expert report used at

7

trial and (2) present certain evidence and witnesses that, purportedly, would have supported his defense. Carey also claims that the cumulative effect of these errors prejudiced him.

### 1. **Counsel's Alleged Failure to Raise Evidentiary Objections**

Carey argues that his attorney provided ineffective assistance due to counsel's purported failure to object to, or seek suppression of, a report prepared by Mr. James M. Tsikalas, a prosecution expert who was unavailable at trial.[7] Carey further alleges that his attorney failed to object to prosecutorial "vouching" for the Tsikalas report during trial.[8] (Doc. 292, at 19).

Contrary to Carey's claims, Carey's counsel raised evidentiary objections to the government's introduction of Mr. Tsikalas's report during the cross-examination of defense experts. In fact, counsel argued that it was improper for the prosecutor to question the defendant's expert, Mr. Erik Leksell, concerning information from the Tsikalas report. (Doc. 278, at 30-31). Counsel made this same objection during cross-examination of Daniel Rapperport, another defense expert who relied on the Tsikalas report. (Doc. 280, at 101-02). The district court overruled these objections. (Doc. 278, at 32; Doc. 280, at 102).

---

[7] Mr. Tsikalas was a fire investigator hired by Eerie Insurance to investigate the scene two days after the fire. (See Doc. 278, at 11).

[8] Carey claims that "statements which constitute vouching are found throughout the entire course of the trial." (Doc. 292, at 19). Carey does not mention specific instances of vouching; instead, he generally alleges that the prosecutor vouched for the veracity of Mr. Tsikalas and his report by relying on the report at trial. (Id.).

8

In addition to the objections, Carey's counsel obtained a limiting instruction for the admissibility of the Tsikalas report. The district judge instructed the jury:

> In giving their opinions Eric Leksell and Daniel Rapperport were asked questions about certain facts and opinions that had not been presented from the witness stand except through reference to the expert report of Mr. Tsikalas. Because these facts and opinions have not been presented in evidence except through the testimony of other experts, you should consider them only for the limited purpose of deciding whether or not the opinions of Mr. Leksell or Mr. Rapperport are based on adequate assessment of the facts and whether or not to accept their opinion. You should not consider those facts in any other way in your deliberations in this case, because they have no bearing on the question of whether Mr. Carey is guilty or not guilty except for the purpose which I have just described to you.

(Doc. 282, at 54). Moreover, counsel raised this issue on appeal. See United States v. Carey, 337 Fed. App'x at 260-62. The Third Circuit held that the district court properly permitted the prosecutor to ask defense experts questions concerning the Tsikalas report and that the lower court's limiting instruction ensured that the report was used for proper purposes. Id. at 262. Based on these facts, the court cannot say that counsel's representation "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688.

With respect to Carey's "vouching" claim, a review of the trial record fails to establish impermissible vouching by the government. To find such vouching, a defendant must show (1) that the prosecutor assured the jury that the witness's testimony was credible, and (2) this assurance was based on the prosecutor's personal knowledge or information not contained in the record. United States v. Walker, 155 F.3d 180, 187 (3d Cir. 1998). A defendant cannot prove vouching merely

9

by showing that the prosecutor assured the jury that a witness's testimony was credible. Id.

In this case, Carey has shown, at best, that the prosecutor provided implied assurances of credibility by questioning defense experts about the report and by mentioning Mr. Tsikalas's findings during closing argument. During the closing, the prosecutor stated:

> While we're not asking you to consider the insurance company's findings and conclusions in this case with respect to the determination of guilt, as the Court's [limiting] instruction clearly indicates, you can consider the fact that Rapperport and Leksell viewed this apparently important information [from the Tsikalas report] about the location of electrical conductors and discounted it completely in favor of what the defendant told them, that the milk cooler receptacle was in the bear and the pop room. So when you evaluate their testimony, you've got to keep in mind not only what they said but what they discounted, important things from witnesses and experts that actually went to the scene close to and after the fire.

(Doc. 286, at 120). Implicitly suggested by the prosecutor is that the Tsikalas report was credible and that defense experts discounted it. These statements, assuming *arguendo* that they satisfy the first prong of a vouching claim, do not constitute impermissible vouching because the prosecutor did not rely on personal knowledge or information outside the record. Furthermore, the Third Circuit held that the prosecutor properly referenced the report throughout trial and even reminded the jury of its limited purpose during closing argument. Carey, 337 Fed. App'x at 262 n.7. Accordingly, failure on the part of Carey's attorney to raise this meritless argument did not result in ineffective assistance of counsel.

## 2. **Counsel's Failure to Call Reputation Witnesses**

Carey also contends that his attorney provided ineffective assistance by failing to present certain evidence and witnesses to support his defense. Carey lists sixteen witnesses that his counsel did not call to testify at trial. (Doc. 292, at 20-23). He contends that these witnesses would have testified to their observations of the fire scene,[9] the presence of Carey's ex-wife near the store on the morning of the fire, and the exact location of the electrical outlet that might have started the fire.[10] In addition, Carey alleges that his counsel did not call one witness who would have testified that two unidentified boys started the fire.[11] (Id. at 21). Another witness, according to Carey, would have testified that Carey's son caused the fire. (Id. at 22). Other evidence yet, namely photographs and videos, would have depicted the inside of the store before the fire occurred.[12] (Id. at 26).

---

[9] For instance, one witness would have allegedly testified to observing smoke from the southeast side of the store. Carey claims that such evidence would have conflicted with the government's evidence. (Doc. 296, at 4).

[10] One witness, for example, would have purportedly testified to observing a coin behind a fuse box on the second floor. (Doc. 296, at 6). Another witness would have supposedly testified to performing repair work on an electrical outlet that was at issue in the case. (Doc. 292, at 21).

[11] Carey's attorney deposed this witness before trial. According to Carey's affidavit, his attorney told him the following: "I spoke to other Attorney's [sic] about this [evidence] and they stated that they would not do that [i.e., introduce the evidence at trial] because it would confuse the Jury." (Doc. 296, at 3).

[12] This claim does not warrant further analysis because Carey fails to explain how these photographs or videos would have further supported his defense at trial.

11

After carefully reviewing Carey's motion, this court discerns four theories by which Carey believes that additional witnesses would have supported his defense. Testimony would have placed the fire's blame on (1) Carey's ex-wife, (2) Carey's son, (3) two unidentified individuals, and (4) a faulty electrical outlet. According to Carey's affidavit, however, Carey informed his attorney of these specific witnesses and their possible testimony. (Doc. 292, at 23) ("[I] repeatedly told counsel to call all these witnesses to testify at trial."). Carey also concedes that his attorney consulted with other attorneys in determining the evidence and witnesses to introduce at trial. (Doc. 292, at 22; Doc. 296, at 3).

In evaluating a claim for ineffective assistance of counsel, courts must remain highly deferential toward an attorney's performance. Strickland, 466 U.S. at 689. This deference is justified in part by the "distorting effects of hindsight" and the multitude of ways in which counsel may provide reasonable assistance. Id. Such deference is also heightened when an attorney makes informed decisions based on trial strategy. Id. at 690 ("Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.").

According to Carey's motion and affidavit, his counsel consciously decided not to introduce the evidence and witnesses now in question. (Doc. 292, at 22; Doc. 296, at 3). A review of the trial record establishes that Carey's counsel called at least eighteen witnesses to testify in Carey's defense. (See Docs. 275-278). Counsel presented evidence and witnesses to suggest that a milk cooler caused an electrical fire (Doc. 286, at 61) and that Carey's health rendered him incapable of intentionally

12

setting the fire (Id. at 69). Counsel also attempted to raise doubt in the government's case that Carey's ex-wife or son could not have set the fire (Doc. 286, at 70-72, 85-68, 90-97). Counsel further rebuffed the government's suggested financial motive by calling an expert who testified that Carey's assets far exceeded his liabilities. (Id. at 76-79).

Thus, counsel attempted to refute the government's theory of the case and offered testimony to support three of Carey's four defense theories. Regarding the fourth theory—that one witness would have told the jury that two unidentified boys started the fire—Carey concedes that his counsel spoke to other attorneys about the matter and later informed Carey that such testimony would only confuse the jury. (Doc. 296, at 3). The record, therefore, does not show that counsel's assistance was objectively unreasonable or prejudicial to Carey's defense.

### 3. **Cummulative Effect**

Carey finally argues that the cumulative effect of his counsel's alleged errors prejudiced his defense. (Doc. 292, at 24). Carey's "cummulative effect" argument is futile given the court's conclusion that counsel was not ineffective. The record shows that defense counsel raised appropriate and timely objections to the Tsikalas report, called and questioned qualified experts and appropriate witnesses, and confronted witnesses on Carey's behalf. Under the Strickland analysis, counsel exercised reasonable legal skill under the circumstances. Lacking proof of error, the court cannot assert that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

**III. Conclusion**

For the foregoing reasons, Carey's § 2255 motion (Doc. 55) will be denied. An appropriate order follows.

                                                      S/ Christopher C. Conner
                                                  CHRISTOPHER C. CONNER
                                                  United States District Judge

Dated:       March 19, 2012

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 4:05-CR-0230** |
| | : | |
| v. | : | **(Judge Conner)** |
| | : | |
| **JOHN FLOYD CAREY** | : | |

## **ORDER**

AND NOW, this 19th day of March, 2012, upon consideration of the motion (Doc. 292) to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, filed by John Floyd Carey, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion (Doc. 292) is DENIED.

2. A certificate of appealability is DENIED. <u>See</u> 28 U.S.C. § 2253(c).


                    S/ Christopher C. Conner
                    CHRISTOPHER C. CONNER
                    United States District Judge